IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | |
| SEARCH OF FOUR CELLULAR | : | CASE NO: |
| TELEPHONES | : | |

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

**To operate and recover numbers stored in seven cell phones and recovered incident to an arrest (CCN # 032-048) in the parking lot of xxxx xxxxxxx xxxxxx, xxxxxxxxx Washington, D.C. on March 11, 2006. The phones are identified as:**

    **(a) Silver LG Cingular cellular telephone "S/N": 512CQKJ122673**
    **(b) Blue and White Samsung Verizon cellular telephone "S/N": YH1Y4201S/15**
    **(c) Two-Tone Gray Motorola cellular telephone with "S/N": 364KGA01NM**
    **(d) Black Motorola Nextel cellular telephone with "S/N": 364VFE4DPD**
    **(e) Black and Silver LG cellular telephone with "S/N": 502MM318181-TCL-P40**
    **(f) Grey Nextel Motorola "S/N": 364KGA52DN**
    **(g) Grey Nextel Motorola "S/N": 364KFU1ZGW**

1.    Your affiant is Investigator Steve Manley, Badge# 266, a member of the Metropolitan Police Department since 1992. I have been assigned as an Investigator since 1998.

2.    I have initiated and participated in numerous drug investigations, including ones involving the use of court-authorized Title III intercepts. Additionally, I have authored numerous affidavits in support of search and seizure warrants and arrest warrants, which have resulted in the seizure of controlled dangerous substances and in the arrests and convictions of drug distributors. Moreover, I have received training in how to conduct investigations using the court-authorized electronic surveillance of telephones and paging devices. Through investigations and training, I have become familiar with the use by drug traffickers of pagers and telephones to communicate, the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

3.    In your affiant's training and experience, it is common for narcotic traffickers to utilize cellular telephones to facilitate communications, while concealing their true location, between themselves, their suppliers and their customers. In your affiant's training and experience it is common for narcotic traffickers to utilize these telephones because of their mobility, their relative security, and their belief that law enforcement has more difficulty intercepting the telephone calls.

4.	In the affiant's experience and training: (1) cellular phones store the phone numbers of incoming and outgoing calls sent to and from the phone; (2) cellular phones store the number of the cellular phone itself; (3) persons who use cellular phones often electronically store (i.e., for purposes of "speed dialing") the phone numbers of friends and acquaintants; and (4) individuals involved in narcotics trafficking are known to use their cellular telephones to make contact with their associates in order to facilitate their narcotics trafficking activities . In my experience and training, all of these stored numbers can be accessed by operating the cell phones. By "operating" the cellular phones and pager, as this term is used in this affidavit, your affiant only refers to the process of turning on the electronic device and searching through its stored memory by pushing the appropriate buttons.

5.	Your affiant believes there is probable cause to search the telephones and the pager specified below and seeks the court to issue a search warrant for such telephones and pager in order to promptly retrieve and analyze all information stored therein.

6.	This affidavit is made in support of an application for a search warrant for seven cellular telephones that were recovered from all five defendants after they were arrested for Posession with Intent to Distribute Cocaine and in excess of three kilograms of cocaine were seized.

7.	Based on your affiant's training and experience and the training and experience of other law enforcement officers, your affiant knows that it is common for individuals engaged in the distribution of controlled substances to utilized telephonic communications, such as cellular telephones to further their criminal activities by coordinating efforts of co-conspirators. These telephones have address books that contain the names, telephone numbers and other information about their coconspirators in the narcotics business. The pager may have the telephone numbers and coded communications of their coconspirators in the narcotics trade.

8.	This affidavit only contains such information as is necessary to show that there is probable cause to believe that fruits and evidence of the following crimes, specifically, (i) possession with the intent to distribute and the distribution of controlled substances, in violation of 21 USC § 841(a)(1); (ii) conspiracy to commit such offenses, in violation of 21 U.S.C. § 846, will be found in the target items.

9.	Unless otherwise noted, whenever in this affidavit your affiant asserts that a statement was made by an individual, that statement is described in substance and in part, and is not intended to be verbatim recitation of such statement. Moreover, this affidavit is not intended to include each and every fact and matter known to the government relating to the subject matter of this investigation. Instead, this affidavit contains only those facts that are necessary to establish that there exists probable cause that the fruits and evidence of the above-reference criminal violations will be found in the target items.

PROBABLE CAUSE

10.     On March 10, 2006, a law enforcement officer of the Metropolitan Police Department received information from a Confidential Informant, herein referred to as CI, that two Mexican subjects, traveling from New York were in possession of and attempting to sell kilogram quantities of cocaine.  The CI stated that it could arrange a meeting between an undercover officer and the Mexican subjects.

11.     On March 11, 2006, an undercover officer received an incoming call from the CI, advising that the Mexican subjects were en route.  The CI stated that the meeting would take place at the Burger King located at x$^{xx}$ & xxxxxxx xxxxxx, xxxxxxxxx Washington, D.C.  the undercover officer received another incoming phone call from the CI advising the illicit drug transaction would take place at the Safeway parking lot located at xxxxxxx xxxxxx & xxxxx xxxxxxx xxxx, xxxxxxxxx.  The CI advised the undercover officer that there would be a total of five Mexican subjects arriving in two vehicles, a Blue Neon and White Dodge pickup truck.  The undercover officer received another phone call from the CI, advising that the Mexican subjects were on the Safeway parking lot.

12.     The CI called the undercover officer, advising the undercover officer that it and the Mexican subjects were in the rear of the U.S. Post Office, located at xxxx xxxxxxx xxxxxx, xxxxxxxxx.  Officers conducting surveillance confirmed that the Blue Neon and White Dodge pickup truck were in the rear of xxxx xxxxxxx xxxxxx, xxxxxxxxx (xxx. Xxxx xxxxxx).

13.     The CI called the undercover officer, telling him that the cocaine was in the white pickup truck, and that the Mexican subjects were having a problem with opening the hidden compartment.  Officers conducting surveillance confirmed that they observed five Hispanic male subjects on the passenger of the white pickup truck, bending down towards the passenger seat.  The investigation subsequently revealed that the hidden compartment was accessed from that location.

14.     The CI then called the undercover officer, advising that the hidden compartment was open and that the Mexican subjects were ready to meet.  The undercover officer advised the Affiant that he was en route to rear of the U.S. Post Office.  Upon arrival, the undercover officer exited his unmarked vehicle, walking to the white pickup truck.  The undercover officer exchanged pleasantries with the CI and a Hispanic male subject later identified as **Antonio Molina**.  The undercover officer showed **Molina** approximately $10,570 in MPDC funds.  **Molina** then motioned to another Hispanic male, later identified as **Fernando Nunez,** who reached into a hidden compartment beneath the front passenger bench seat of the white pick up truck and retrieved a rectangular shaped object wrapped in black tape, and showed it to the undercover officer.  After seeing this object, the undercover officer instructed **Molina** to walk back with him to his vehicle to get the rest of the money.

15.     The undercover officer and **Molina** walked back to the undercover vehicle and while doing so, the undercover officer signaled other undercover officers, who alerted the Affiant and

the arrest teams. Members of the arrest team responded to the rear of the xxxxx xxxxxxx xxxxxx, xxxxxxxxx to affect the arrest of the Hispanic male subjects in the rear of the U.S. Post Office. Upon arriving in the rear of the U.S. Post Office, the Hispanic male subjects attempted to flee the scene. All five Hispanic male subjects were apprehended.

16.     Recovered from the hidden compartment of the white pickup truck, were three rectangular shaped objects wrapped in black tape, each containing a compressed white powdered substance and each weighing in excess of 1000 grams, that later tested positive for cocaine hydrochloride. The following cellular telephones were seized incident to the arrest of **Antonio Molina, Fernando Nunez, David Sanchez, Otoniel Orduno and Silvio Morales Nunez**:

>   **(a) Silver LG Cingular cellular telephone "S/N": 512CQKJ122673**
>   **(b) Blue and White Samsung Verizon cellular telephone "S/N": YH1Y4201S/15**
>   **(c) Two-Tone Gray Motorola cellular telephone with "S/N": 364KGA01NM**
>   **(d) Black Motorola Nextel cellular telephone with "S/N": 364VFE4DPD**
>   **(e) Black and Silver LG cellular telephone with "S/N": 502MM318181-TCL-P40**
>   **(f) Grey Nextel Motorola "S/N": 364KGA52DN**
>   **(g) Grey Nextel Motorola "S/N": 364KFU1ZGW**

17.     The CI was debriefed by the Affiant at the conclusion of the operation. The Affiant learned that the illicit drug transaction was arranged between the CI, Sanchez and Molina using their respective cellular telephones.

18.     **Antonio Molina, David Sanchez, Fernando Nunez, Otoniel Orduno and Silvio Morales Nunez**, and two other individuals, were arrested and charged with, among other things, a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(ii). This case is now pending in U.S. District Court as Case No. 06-0101.

19.     Your affiant requests authorization to activate and operate the aforementioned cellular phones to reveal (1) the phone numbers assigned to these items; (2) the numbers of incoming pages and calls; and (3) any other stored phone numbers, which would permit law enforcement officials to investigate (a) the identity or identities of person(s) who owned the cellular phones; (b) the connection these person(s) have with the contraband recovered from the vehicle in question; and (c) the identities of other friends and associates of these person(s) who may have information related to this event. Your affiant will not access any voice mail message(s) which may have been stored in the aforementioned cellular phones. As a practical matter, your affiant would be unable to do so without possession of a PIN number which would be necessary to access such voice mail messages.

20.     Accordingly, your Affiant respectfully submits that there is probable cause to believe that operating the aforementioned cellular phones would produce additional evidence of the ownership of the contraband recovered from the vehicle, incident to an arrest (CCN # 032-048) in the rear parking lot of the U.S. Post Office located xxxx xxxxxxx xxxxxx, xxxxxxxxx Washington, D.C. on March September 27, 2005.

_____
Steve Manley, Badge 266
Investigator, Metropolitan Police Department


Signed and Sworn to before me, this _____ Day of March, 2006.


_____
United States Magistrate Judge